**Hearing Date:  June 12, 2007 at 10:00 a.m. (New York Time)**
**Objections Due:  June 8, 2007 at 5:00 p.m. (New York Time)**

SCHULTE ROTH & ZABEL LLP
Attorneys for Debtors and Debtors In Possession
919 Third Avenue
New York, NY 10022
Telephone:    (212) 756-2000
Facsimile:    (212) 593-5955
Adam C. Harris (AH 4641)
Abbey Walsh (AW 8677)
Adam L. Hirsch (AH 3594)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**LIONEL L.L.C., et al.,**<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 04-17324 (BRL)**<br><br>**(Jointly Administered)** |

**DEBTORS' (I) OBJECTION AND MOTION TO ESTIMATE CLAIM NO. 55 (MTH TRADE SECRET DAMAGES CLAIM) PURSUANT TO SECTIONS 502(b) and 502(c) OF THE BANKRUPTCY CODE AND (II) OBJECTION AND MOTION TO EXPUNGE CLAIM NOS. 54 AND 56 (MTH CLAIMS FOR LEGAL FEES AND INTEREST ON JUDGMENT) PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE**

Lionel L.L.C. ("Lionel") and Liontech Company ("Liontech", and together with Lionel, the "Debtors"), as debtors and debtors in possession, hereby submit this (I) Objection and Motion to Estimate proof of claim number 55 (the trade secrets damages claim) filed by Mike's Train House, Inc ("MTH") under sections 502(b) and (c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (II) Objection and Motion to Expunge proof of claim numbers 54 (the interest on judgment claim) and 56 (the trade secret legal fees claim) filed by MTH under section 502(b) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules.  In support of the relief requested herein, the Debtors respectfully represent as follows:

10421641

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

**FACTS**

**Background**

2. On November 15, 2004 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

3. The U.S. Trustee appointed an unsecured creditors' committee on December 2, 2004 (the "Initial Committee"), but upon the resignation of two of the three committee members, the U.S. Trustee disbanded the Initial Committee three weeks later. Given renewed interest, on May 6, 2005, the U.S. Trustee appointed the current unsecured creditors' committee (the "Committee"), consisting of MTH, a competitor and judgment creditor, and three trade creditors. On May 13, 2005, the U.S. Trustee also appointed Sanda Kan Industrial (1981), Ltd., one of Lionel's primary suppliers, to the Committee. The Committee remains active in these chapter 11 cases.

4. Lionel is America's preeminent marketer of model train products, including steam and diesel engines, rolling stock, operating and non-operating accessories, track, transformers and electronic control devices. The Lionel name was established in 1900 and has become an American icon with the most recognized brand in the model train industry and is synonymous in consumers' minds with electric trains.

**The MTH Trade Secrets Trial and Appeal**

5. One of Lionel's main competitors is MTH. In 2000, MTH sued Lionel in the United States District Court for the Eastern District of Michigan (the "Michigan District Court"), accusing Lionel, among other things, of violating the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws § 445.1901 et seq. (the "Trade Secrets Case"). MTH's suit was based upon allegations that Korea Brass -- one of Lionel's former Korean suppliers -- stole confidential design drawings and scheduling information from MTH's Korean supplier, Samhongsa, and then used that information to design and build trains for Lionel. MTH further alleged that Lionel knew or should have known that its trade secrets were being incorporated into Lionel products, and contended that it had experienced both lost sales and an erosion of its overall profitability as a result of the misconduct. Lionel strongly disputed - and continues to dispute - all of MTH's allegations.

6. On June 9, 2004 the jury in the Trade Secret Case returned a verdict in favor of MTH in the amount of $38,608,305.00. Lionel then filed a motion for a new trial and for judgment notwithstanding the jury verdict. The Michigan District Court denied Lionel's motions, and on November 3, 2004 entered judgment in favor of MTH in the amount of the jury verdict (the "MTH Judgment"). The Michigan District Court also granted MTH certain injunctive relief against Lionel.

7. Lionel did not have sufficient liquidity or financial strength to post a bond to stay enforcement of the judgment pending the Appeal. For this reason, as well as to provide protection against precipitous efforts by MTH to collect on the MTH Judgment (including, without limitation, through attachment and possibly foreclosure), and to provide suppliers and customers with a degree of certainty while the Debtors pursue the Appeal, the Debtors commenced these chapter 11 cases.

8.       Having both substantive and procedural grounds for an appeal of the judgment and the injunction, Lionel filed its appeal (the "Appeal") on January 15, 2005 in the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit").[1]  The Sixth Circuit held oral arguments in respect of the Appeal on June 7, 2006 and issued its decision on December 14, 2006 (the "Decision").  In the Decision, the Sixth Circuit reversed the Michigan District Court's denial of Lionel's motion for a new trial and vacated the MTH Judgment.  The Decision was based on, among other things, the Sixth Circuit's conclusion that the Michigan District Court erred in (i) admitting the expert testimony of Dr. Jeffrey L. Stein and (ii) allowing Dr. Stein to testify regarding the conclusions reached by a Korean professor, Kun-Woo Lee, with respect to the issue of "copying" of design drawings (for, among other reasons, the fact that Professor Lee never testified at trial).  The Sixth Circuit ruled that these errors could not be considered "harmless", and that Dr. Stein's testimony "likely had a substantial effect on the verdict."  In addition, the Sixth Circuit held that the Michigan Tort Reform Act prohibits the imposition of joint and several liability for misappropriation of trade secrets, and that any award granted on remand "should be assessed severally only."  Finally, the Sixth Circuit concluded that the jury verdict improperly "double counted" MTH's damages.

9.       On December 28, 2006, MTH filed a Petition for Panel Reconsideration and Suggestion for Rehearing *En Banc* with the Sixth Circuit, but the Sixth Circuit denied MTH's petition on April 19, 2007.  On April 26, 2007, MTH petitioned the Sixth Circuit to stay issuance of the mandate, and indicated an intention to file a petition for a writ of certiorari to the United States Supreme Court.  The Sixth Circuit granted the stay on May 16, 2007.  On May 30, 2007, MTH filed a Motion to Vacate Stay of Mandate and for Issuance of Mandate, indicating that it

---

[1] The Bankruptcy Court granted limited relief from the automatic stay to allow the prosecution of the Appeal.

had decided not to petition for a writ of certiorari. The Sixth Circuit has not yet acted on this Motion. If the Sixth Circuit grants MTH's request, the mandate will issue and the case will be remanded back to the Michigan District Court. However, the automatic stay extant in the Debtors' chapter 11 cases precludes the prosecution of the case in the Michigan District Court absent further order of this Court.

## Mediation

10. While the Rehearing Petition was pending, the Parties submitted to non-binding mediation to try to reach a consensual resolution of the Trade Secrets Case and certain other claims asserted by MTH in these cases. The Parties selected United States Bankruptcy Judge Cecelia Morris as the mediator.

11. The Parties met and conferred with Judge Morris multiple times; however, the Parties were unable to reach settlement of any of the claims.

## The Trade Secret Claims

12. On or about May 3, 2005, MTH filed three claims against Lionel arising out the Trade Secrets Case. The claims are (a) a claim in the amount of $38,608,305.00 (the "Trade Secrets Damages Claim") for the money judgment awarded to MTH by the jury in the Trade Secrets Litigation (claim no. 55), (b) a claim in the amount of $28,813.44 (the "Interest Claim") for interest accruing between the date of the MTH Judgment (November 3, 2004) and the Petition Date (claim no. 54), and (c) a claim in the amount of $3,499,433.57 (the "Legal Fees Claim") for legal fees incurred in connection with the Trade Secrets Litigation (claim no. 56).[2]

---

[2] MTH also filed a claim (no. 53) alleging pre-Petition Date patent infringement claims relating to MTH's smoke patents in the amount of $17,467,449.06 (the "Smoke Patent Claim"). The Debtors filed an objection to the Smoke Patent Claim on June 15, 2006. Proceedings relating to the objection currently are stayed pursuant to a Stipulation and Order Staying Certain Actions, Proceedings, Litigation, and Contested Matters Between Lionel L.L.C. and Mike's Train House, Inc. dated July 11, 2006.

## RELIEF REQUESTED

13.     The Debtors seek entry of an order (i) disallowing and expunging the Legal Fees Claim and the Interest Claim, (ii) reclassifying the Trade Secrets Damages Claim as disputed, contingent and unliquidated, and (iii) setting procedures for, and scheduling a hearing on, estimation of the Trade Secrets Damages Claim.

## BASIS FOR RELIEF REQUESTED

### Objection and Motion to Expunge Legal Fees Claim and Interest Claim

14.     The Debtors hereby object to, and seek the disallowance and expungement of, the Interest Claim and the Legal Fees Claim.  The Interest Claim calculates interest from the date of the MTH Judgment until the Petition Date.  Because the MTH Judgment has been vacated by the Sixth Circuit Decision, there is no longer a valid judgment on which interest could accrue, thereby rendering the Interest Claim void.  The Legal Fees Claim seeks reimbursement of MTH's legal fees and expenses expended in connection with the Trade Secrets Case.  MTH filed a Petition for Counsel Fees and Cost Reimbursement in the Michigan District Court (the "Legal Fees Petition") on November 5, 2004; however, it has not been ruled upon because of the automatic stay extant in this case.  The Legal Fees Petition asserts that under the Michigan Uniform Trade Secrets Act ("MUTSA"), attorney's fees can be awarded to the prevailing party in a litigation if willful and malicious misappropriation exists.  The Sixth Circuit Decision vacating the MTH Judgment leaves MTH ineligible to seek the reimbursement of legal fees and expenses under the MUTSA and therefore, the Legal Fees Claim is also void.

15.     Based on the foregoing, the Debtors respectfully request that claim numbers 54 and 56, the Interest Claim and the Legal Fees Claim respectively, be disallowed and expunged from the Debtors' claim register.

**Objection and Motion to Estimate the Trade Secrets Damages Claim**

16. The Trade Secrets Damages Claim asserted by MTH was filed in a liquidated dollar amount based upon the amount awarded to MTH in the MTH Judgment. Due to the Sixth Circuit's reversal of the MTH Judgment, any claim arising from the Trade Secrets Case must now be considered disputed, contingent and unliquidated. Therefore, the Debtors object to the Trade Secrets Damages Claim and request the entry of an order authorizing the reclassification of such claim as disputed, contingent, and unliquidated.

17. The claim is disputed, contingent and unliquidated because the Decision does not finally resolve the Trade Secrets Case, but instead provides for the case to be remanded back to the Michigan District Court for a new trial consistent with the Decision. As long as the Trade Secrets Damages Claim remains disputed, contingent and unliquidated, it will prevent the Debtors' from confirming a plan of reorganization. See Sherman v. Harbin (In re Harbin), 2007 WL 1322389, *4 (9th Cir. May 8, 2007) (holding that in order to meet the feasibility requirement for confirmation of a plan under section 1129(a)(11) a court must evaluate "whether a potential future judgment may affect the debtor's ability to implement its plan.") In order to avoid the needless and undue delay that would necessarily result if the Debtors were required to await the final outcome of litigation of the Trade Secrets Case, the Debtors hereby move the Bankruptcy Court to estimate the Trade Secrets Damages Claim under section 502(c) of the Bankruptcy Code.

I.  Estimation of the Trade Secrets Damages Claim is Mandatory under Section 502(c)(1) of the Bankruptcy Code

18. Section 502(c)(1) provides that:

> There shall be estimated for purposes of allowance under this section -- (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.

19.     Estimation is mandatory upon a determination by a bankruptcy court that liquidation of a claim premised on a litigation pending in a non-bankruptcy forum would result in undue delay in the bankruptcy case. In re G-I Holdings, Inc., 2006 WL 2403531, *3 (Bankr. D.N.J. August 11, 2006) ("Section 502(c) of the Bankruptcy Code is drafted in mandatory terms. That is, any contingent or unliquidated claim 'shall' be estimated so long as the 'liquidation' of the particular claim would 'unduly delay the administration of the case.'"); In re Bison Resources, Inc., 230 B.R. 611, 618 (Bankr. N.D. Okla. 1999) (noting that "cases which have described the duty of the bankruptcy courts to estimate claims as 'mandatory' have also found that liquidation of the claim outside of the bankruptcy forum would result in undue delay in the bankruptcy case."); In re Apex Oil Co., 107 B.R. 189, 192 (Bankr. E.D. Mo. 1989) ("the key consideration in whether a bankruptcy court should estimate a claim pending in another forum is whether liquidation of that claim would unduly delay the debtor's Chapter 11 reorganization."); In re Lane, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) (granting motion to estimate because no there was indication of how long resolution of state court action (including appeals) underlying creditor's claim would take.).

20.     The Debtors respectfully submit that a failure of this Court to estimate the Trade Secrets Damages Claim will result in undue delay of the administration of the Debtors' cases due to the months, if not years, that it will take for the Michigan District Court to conduct a new trial and for any appeals from the judgment in the new trial to be prosecuted to conclusion. That this process could take years is no exaggeration considering that MTH commenced the Trade Secrets Case in 2000 - seven years ago. A retrial, including appeals, could last just as long. Therefore, estimation of the Trade Secrets Damages Claim is mandatory.

### a. The Debtors' Plan of Reorganization Cannot Be Confirmed Until the Trade Secrets Damages Claim is Settled, Resolved or Estimated

21. On May 21, 2007, the Debtors filed their Disclosure Statement, to which the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated May 21, 2007 (the "Plan") was attached as an exhibit. The Plan will leave all creditors of the Debtors' estates unimpaired by paying them in full, in cash, plus post-petition interest, on the effective date. This Plan has been a long time in coming. The Debtors commenced their chapter 11 cases two and a half years ago but have been unable to propose a plan until now because of the pendency of the Appeal. Now that the Appeal has been resolved, the Debtors wish to pursue confirmation of the plan as expeditiously as possible in order to provide distributions to the holders of allowed prepetition claims.

22. However, one of the conditions precedent to confirmation of the Plan is that the Trade Secrets Damages Claim be settled, otherwise resolved or estimated by the Bankruptcy Court. As demonstrated by the parties unsuccessful efforts at mediation, it is unlikely that the Trade Secrets Damages Claim will be settled. Moreover, as discussed below, it could take years for the Trade Secrets Damages Claim to be finally adjudicated in a non-bankruptcy forum. This leaves estimation as the only option for reaching confirmation of the Plan without substantial and unnecessary delay.

23. This Court granted limited relief from the automatic stay to allow the prosecution of the Appeal, but that relief did not grant or contemplate relief to pursue limitless litigation of the Trade Secrets Damages Claim, with an indefinite timeline, in non-bankruptcy forums. Such relief would be to the detriment of all other creditors of the Debtors' estates. Section 502(c) is designed to avoid this outcome and is mandatory when it will prevent undue delay of a debtor's case.

      **b.**  **The Trade Secrets Damages Claim Cannot Be Finally Resolved In a Timely Manner Outside of the Bankruptcy Court.**

  24. The timing of a retrial of the Trade Secrets Case in the Michigan District Court depends on the availability of that Court and the degree of pre-trial discovery or motion practice that may precede the retrial. As a result, it will likely be months before a trial is conducted and a judgment is entered in the retrial.[3] Once the trial is concluded, it will likely be appealed by the unsuccessful party. As a result, a final judgment in the Trade Secret Case could be years away (as evidenced by what has transpired to date).

  25. On the other hand, this Court can estimate the Trade Secrets Damages Claim under section 502(c) of the Bankruptcy Code in a much shorter amount of time, thereby avoiding unnecessary and burdensome delay of the administration of the Debtors' cases and confirmation of the Plan. Therefore, the Debtors respectfully submit that this Court can, and, in fact, must, estimate the Trade Secrets Damages Claim to prevent undue delay of the Debtors' cases.

II. <u>The Trade Secrets Damages Claim Should Be Estimated at Zero</u>

  26. The Debtors submit that the judgment should be estimated at zero. The Trade Secret Case turns entirely on acts committed in Korea by Korea Brass – acts that Lionel did not authorize and had no knowledge of. MTH cannot establish a legal or factual basis on which Lionel can be held liable for Korea Brass's acts.

  27. Even if Lionel could be held liable, the amount in damages that could be properly assigned to Lionel would be minimal. First, the Sixth Circuit's decision establishes that under Michigan law, MTH's damages must be apportioned according to the relative culpabilities of the defendants. Assuming Lionel is found even *partly* culpable (which, as set forth above, we do not

---

[3] The Michigan District Court's ability to conduct the trial is dependent upon this Court granting relief from the automatic stay.

believe the facts and law will support), there is no serious doubt that Korea Brass was the *much* more culpable party, and thus must be apportioned an overwhelming percentage of MTH's damages.  Second, MTH's total damages are only a small fraction of what MTH has claimed, given basic trade-secret-law damages principles.  Given the apportionment requirement of Michigan tort law and the damages-limiting rules of trade secret law, even if the Trade Secrets Damages Claim against Lionel is not estimated at zero, it cannot be estimated at a significantly higher amount.

28.    Lionel will present evidence at hearings to be scheduled by this Court in opposition to MTH's allegations on both liability, and, if necessary, damages.

III.    The Estimation Procedure

29.    "Neither the Code nor the Federal Rules of Bankruptcy Procedure provide any procedures or guidelines for estimation.  However, courts addressing the issue have held that bankruptcy judges may use 'whatever method is best suited to the particular contingencies at issue.'"  In re DeGeorge Financial Corp., 2002 WL 31096716, *10 (D. Conn. July 15, 2002) (quoting Bittner v. Borne Chemical Co., Inc., 691 F.2d 134, 135 (3d Cir. 1982)).  This discretion is subject only to "the legal rules which may govern the ultimate value of the claim.  For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law."  Bittner, 691 F.2d at 135.  "The methods used by courts [to estimate claims] have run the gamut from summary trials ([In re] Baldwin[-United Corp.], 55 B.R. [885,] 889 [(Bankr. S.D. Ohio 1985)]) to full-blown evidentiary hearings (In re Nova Real Estate Inv. Trust, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982)) to a mere review of pleadings, briefs, and a one-day hearing involving oral argument of counsel.  In re Lane, 68 B.R. 609, 613 (Bankr. D. Hi. 1986)."  Id.

30. In accordance with this Court's statements on the record of the status conference on May 22, 2007, the Debtors respectfully request that the Trade Secrets Damages Claim be estimated pursuant to a procedure substantially similar to the one used in the Baldwin-United case. See In re Baldwin-United Corp., 55 B.R. 885 (Bankr. S.D. Ohio 1985). Debtors will file and serve a order containing proposed procedures no later than five (5) days prior to the hearing on this Motion.

## Conclusion

31. For the reasons set forth herein, Lionel respectfully requests that the Bankruptcy Court enter an order (i) disallowing and expunging the Interest Claim and the Legal Fees Claim; (ii) classifying the Trade Secrets Damages Claim as disputed, contingent, and unliquidated, (iii) setting procedures for a summary trial in order to estimate the amount of the Trade Secrets Damages Claim for purpose of allowance under section 502(c) of the Bankruptcy Code. The Debtors will file and serve a form of order no later than five (5) days prior to the hearing on the Motion.

Dated: New York, New York  
       June 1, 2007

SCHULTE ROTH & ZABEL LLP  
Attorneys for the Debtors  
and Debtors in Possession

By: /s/ Adam C. Harris  
    Adam C. Harris (AH 4641)  
    Abbey Walsh (AW 8677)  
    Adam L. Hirsch (AH 3594)

919 Third Avenue  
New York, New York 10022  
Telephone: (212) 756-2000  
Facsimile: (212) 593-5955  
E-mail: adam.harris@srz.com  
        abbey.walsh@srz.com  
        adam.hirsch@srz.com