**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:                                                                   Chapter 11

     Lionel L.L.C., <u>et</u> <u>al</u>.,                    Case No. 04-17324

     Debtors,

----------------------------------------------------------------x

APPEARANCES:

SCHULTE ROTH & ZABEL LLP
Attorneys for the Debtors
and Debtors in Possession
919 Third Avenue
New York, New York 10022
(212) 756-2000
By: Adam C. Harris
Abbey Walsh
Adam L. Hirsch

KOHN, SWIFT, & GRAF, P.C.
Attorneys for Mike's Train House, Inc.
One South Broad Street
Suite 2100
Philadelphia, Pennsylvania 19107
(215) 238-1700
By: Robert A. Swift
Robert J. LaRocca

STEVENS & LEE, P.C.
Attorneys for Mike's Train House, Inc.
485 Madison Avenue
New York, New York 10022
(212) 319-8500
By: Alec P. Ostrow

HALPERIN BATTAGLIA RAICHT, LLP
Counsel to the Official Committee of
Unsecured Creditors of Lionel L.L.C.
555 Madison Avenue, 9th Floor
New York, New York 10022
(212) 765-9100
By: Alan D. Halperin
Robert D. Raicht

1

By: Burton R. Lifland,
United States Bankruptcy Judge

**MEMORANDUM DECISION REGARDING CLAIMS OBJECTIONS,
ESTIMATION PROCEDURES, STAY MODIFICATION
<u>AND EXTENSION OF EXCLUSIVITY</u>**

Before the Court is the motion of Lionel L.L.C. and Liontech Company ("Lionel" or the "Debtors") to estimate (the "Estimation Motion") proof of claim number 55 (the "Trade Secrets Damages Claim"), filed by Mike's Train House, Inc ("MTH"), pursuant to sections 502(b) and (c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the motion to expunge proof of claim numbers 54 (the "Interest Claim") and 56 (the "Legal Fees Claim") filed by MTH under section 502(b) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules.  Lionel has filed objections relating to all of the above referenced filed proofs of claim.  MTH objects to the Estimation Motion and cross-moves to modify the stay and permit the litigation of the Trade Secrets Damages Claim to go forward in the District Court in the Eastern District of Michigan.  MTH has also moved for an order (the "Deposition Motion") authorizing the taking of videotaped depositions of three potential witnesses.

Lionel also moves for an order granting a fifth extension of the exclusive period during which only Lionel may file a plan of reorganization and solicit acceptances thereof through October 16, 2007, and December 17, 2007, respectively MTH objects to a further extension.  An evidentiary hearing commenced on June 27 and continued on August 2, 2007.

2

**Background**

Lionel is a well-known marketer of model train products, including steam and diesel engines, rolling stock, operating and non-operating accessories, track, transformers and electronic control devices. One of Lionel's main competitors is MTH. In 2000, MTH sued Lionel in the United States District Court for the Eastern District of Michigan (the "Michigan Court") for violating the Michigan Uniform Trade Secrets Act (the "Trade Secrets Litigation"). The suit was based on allegations that one of Lionel's former suppliers stole confidential design drawings from MTH's supplier and then used that information to design and build trains for Lionel. A trial was held and on June 9, 2004, the jury returned a verdict of $38,608,305.00 in MTH's favor. Lionel filed a motion, which was denied, for a new trial. Financially unable to post a bond to stay enforcement of the judgment pending appeal, Lionel commenced their voluntary chapter 11 cases on November 15, 2004.

On May 3, 2005, MTH filed the three proofs of claim against Lionel arising out of the Trade Secrets Litigation:[1] the Trade Secrets Damages Claim in the amount of $38,608,305.00; the Interest Claim, in the amount of $28,813.44 for interest accruing between the date of the MTH Judgment (November 3, 2004) and the Petition Date, and the Legal Fees Claim, in the amount of $3,499,433.57 for legal fees incurred in connection with the Trade Secrets Litigation.

After obtaining a modification of the automatic stay from this Court, Lionel appealed the verdict to the United States Court of Appeals for the Sixth Circuit. On December 14, 2006, the Sixth Circuit reversed the Michigan Court's denial of Lionel's

---

[1] MTH also filed claim number 53 alleging patent infringement claims relating to MTH's smoke patents in the amount of $17,467,449.06. The Debtors filed an objection to that claim but proceedings relating to that objection are stayed pursuant to a stipulation dated July 11, 2006.

3

motion for a new trial and vacated the MTH judgment. MTH filed a Petition for Panel Reconsideration and Suggestion for Rehearing *En Banc*, but the Sixth Circuit denied MTH's petition on April 19, 2007. On April 26, 2007, MTH asked the Sixth Circuit to stay issuance of the mandate to allow MTH to file a petition for a writ of certiorari to the United States Supreme Court. The stay was granted on May 16, 2007. On May 30, 2007, MTH filed a Motion to Vacate Stay of Mandate and for Issuance of Mandate. On June 15, 2007, the Sixth Circuit granted the motion and issued the mandate.

The Trade Secrets Damages Claim asserted by MTH was filed in a liquidated dollar amount based upon the amount awarded to MTH in the MTH Judgment. Due to the Sixth Circuit's reversal of the MTH Judgment, the Trade Secrets Damages Claim is now a disputed and unliquidated claim because the Sixth Circuit's decision does not finally resolve the Trade Secrets Damages Case, but instead provides for the case to be remanded back to the Michigan Court for a new trial consistent with the decision. Therefore, the Debtors object to the Trade Secrets Damages Claim and request the entry of an order authorizing the reclassification of such claim as disputed, contingent, and unliquidated. In addition, the Debtors contend that as long as the Trade Secrets Damages Claim remains disputed and unliquidated, it will prevent the Debtors from confirming a plan of reorganization. Thus, in order to avoid the purported delay that would result if the Debtors were required to retry the Trade Secrets Litigation in the Michigan Court and await the final outcome of the litigation, the Debtors seek to have this Court estimate the Trade Secrets Damages Claim pursuant to section 502(c) of the Bankruptcy Code. Accordingly, the Debtors seek entry of an order (i) disallowing and expunging the Legal Fees Claim and the Interest Claim, (ii) reclassifying the Trade Secrets Damages Claim as

disputed, contingent and unliquidated, (iii) setting procedures for, and scheduling a hearing on, estimation of the Trade Secrets Damages Claim and (iv) extending exclusivity to allow for the resolution or estimation of such claims.

**Discussion**

Section 502(c) of the Bankruptcy Code provides that:

(c) There shall be estimated for purpose of allowance under this section—

> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

11 U.S.C. § 502(c); *see Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.*), 10 F.3d 944, 957 (2d Cir. 1993) ("A bankruptcy court must estimate 'any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.'"); *In re G-I Holdings, Inc.*, 2006 WL 2403531, *3 (Bankr. D.N.J. August 11, 2006) ("Section 502(c) of the Bankruptcy Code is drafted in mandatory terms. That is, any contingent or unliquidated claim 'shall' be estimated so long as the 'liquidation' of the particular claim would 'unduly delay the administration of the case.'"); *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) ("This duty of the bankruptcy court is mandatory, since the language of [section 502(c)] states 'shall'"). Thus, when the liquidation of a claim is premised on litigation pending in a non-bankruptcy court, and the final outcome of the matter is not forthcoming, the bankruptcy court should estimate the claim. *See Maxwell v. Seaman Furniture Company, Inc. (In re Seaman's Furniture Co. of Union Square, Inc.)*, 160 B.R. 40, 42 (S.D.N.Y. 1993) ("Estimation is an expedient method for setting the amount of a claim that may receive a distributive share of the estate."); *In re Apex Oil Co.*, 107 B.R. 189, 192 (Bankr. E.D. Mo.

5

1989) ("the key consideration in whether a bankruptcy court should estimate a claim pending in another forum is whether liquidation of that claim would unduly delay the debtor's Chapter 11 reorganization."); *In re Lane*, 68 B.R. at 611 (section 502(c) of the Bankruptcy Code requires the court to estimate any claim where failing to do so would unduly delay the administration of the case). A main goal of the Bankruptcy Code is to equitably distribute the debtor's assets among its creditors. Lengthy bankruptcy proceedings cause delayed distributions, which in turn, greatly devalue the claims of all creditors as they cannot use the assets until they receive them. *See In re Paramount Publix Corp.,* 8 F. Supp. 644, 646-47 (S.D.N.Y. 1934) ("Time is of the essence in bankruptcy administration. An early distribution of the bankrupt's assets among his creditors is imperative.

It is more than seven years since the Trade Secrets Litigation between Lionel and MTH commenced. The MTH Judgment was the impetus for the filing of these chapter 11 proceedings that have now been pending before this court for over two and a half years awaiting the outcome of the appeal  As with most chapter 11 proceedings, Lionel's status as a chapter 11 debtor has placed a strain on the company's management and employees, and their relationships with both customers and manufacturers. It has also materially affected Lionel's ability to expand its business beyond the pure "hobby" market. Mr. Calabrese, Lionel's president and CEO since September 2004, testified that he has been working diligently to develop Lionel's "mass" business such as co-branding opportunities with retailers such as Macy's, Toys-R-Us and Target. However, given the continued uncertainty surrounding Lionel's bankruptcy and the MTH claims, the willingness of the mass merchandisers to get involved in long term commitments with

6

Lionel is limited. [2] Some retailers, such as Wal-Mart have "flat out refused to deal with Lionel while in bankruptcy."

In addition, the prolonged chapter 11 cases have had a negative effect on the Debtors' relationships with its employees. Mr. Calabrese testified that he has lost through resignation several key employees, including several senior employees with 20 odd years of experience in the product development area as well as the head of hobby sales. Mr. Calabrese testified further that although the company has several management positions open, including the head of mass sales, head of product development and head of business affairs, it has been extremely difficult to attract talented and experienced people under the current circumstances. Mr. Calabrese himself is laboring under a contract that expires at the end of this year.

Further, in the years since the Petition Date, Lionel has spent approximately $10 million dollars in total fees and expenses of which $5 million relates purely to the administration of the chapter 11 cases, including the company's attorneys and professionals, the committee's professionals, United States Trustee's fees and other similar fees.

Not long after the reversal of the Judgment by the Sixth Circuit, on May 21, 2007, the Debtors filed their Disclosure Statement and Joint Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code. The Plan proposes to leave all creditors of the Debtors' estates unimpaired by paying them in full, in cash, plus post-petition interest, on the effective date. One of the conditions precedent to confirmation of the Plan is that the Trade Secrets Damages Claim be settled, otherwise resolved or estimated by the

---

[2] For example, Lionel has been invited to participate in the Macy's parade but Macy's has expressed uncertainty about giving Lionel that slot given "what's going on in with the bankruptcy and the long term issues regarding its viability."

7

Bankruptcy Court.  Considering the enormous dollar amounts of the claims asserted by MTH (claims which MTH asserts could result in damages of between $60 and $70 million) in comparison to the rest of the claims and the assets of the Debtors' estates, the Debtors clearly cannot confirm the Plan if this Court cannot find it feasible without the liquidation of MTH's claims.  *See eg., Sherman v. Harbin (In re Harbin)*, 2007 WL 1322389, *4 (9th Cir. May 8, 2007) (holding that in order to meet the feasibility requirement for confirmation of a plan under section 1129(a)(11) a court must evaluate "whether a potential future judgment may affect the debtor's ability to implement its plan."); *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1382 (9th Cir.1985) (estimation necessary for a determination of plan feasibility).

MTH contends there will not be an undue delay in the administration of these chapter 11 cases if the stay is modified to allow the case to be retried in the Michigan Court.  That simply defies logic.  An estimation proceeding in this Court can be conducted within a very short period of time versus a full-blown jury trial in Michigan which is not even calendared.  In the first trial, the parties engaged in 18 days of trial resulting in the jury verdict in June 2004.  Post-trial motions and briefing were not concluded until November 2004, when Lionel's motion for a new trial was denied and judgment was finally entered.  The appeal to the Sixth Circuit, including MTH's Petition for Reconsideration, consumed an additional two years and three months.  Under the procedures proposed by Lionel in connection with the Estimation Motion, estimation of the Trade Secrets Damages Claim could be concluded by the end of August, 2007.

MTH also argues that any delay in retrying the case in Michigan should not be an issue because Lionel can go ahead and confirm a plan without dealing with MTH's

8

claims which can proceed post-confirmation or simply dismiss the chapter 11 cases and pay all creditors other than MTH. This simplistic argument is unrealistic and does not even have cosmetic appeal. First, dismissal would result in the occurrence of events of default under the Debtors' DIP financing facilities, causing acceleration of approximately $45 million in obligations (and leaving the Debtors without working capital to run the business and all creditors at the mercy of the lenders' exercise of remedies), and second result in between $15 million and $20 million of pre- and postpetition obligations becoming immediately due and payable. Moreover, under the Plan, the Debtors intend to refinance these obligations through a new exit financing facility to replace its existing debtor in possession financing facilities, and new equity capital to pay all other allowed claims and exit costs. However, with the threat of $60 - $70 million in additional claims being asserted by MTH, the Debtors will have no access to the capital necessary to permit the payment of those obligations and/or the confirmation of a plan. Mr. Turkington, Lionel's CFO, also explained that based upon his experience as CFO after the MTH jury verdict entered in June 2004, that any dismissal of the chapter 11 cases with the specter of the MTH litgation continuing to hang over the head of Lionel would result in trade creditors, particularly manufacturers, constricting trade credit and even insisting on cash on delivery or cash in advance.

      Even if the Debtors could get exit financing to confirm a plan prior to resolving MTH's claims, having MTH's claims ride through the bankruptcy without being discharged would not satisfy section 1129(a)(11) of the Bankruptcy Code. That section requires that "confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor…unless such liquidation or

9

reorganization is provided for in the plan." 11 U.S.C. § 1129(a)(11). A liquidation or further reorganization contingency cannot realistically be provided for in a plan, when neither the likelihood of an adverse judgment, nor the timing and amount of such a judgment, can be predicted with any certainty. *See In re Harbin*, *supra*.

MTH also contends that its request for injunctive relief is not a "claim" capable of estimation under Section 101(5)(a) of the Bankruptcy Code. This argument presupposes a finding of liability on the part of Lionel. When, and if, MTH's Trade Secrets Damages Claim is estimated above $0, then a determination will be made if MTH's request for an injunction against future misappropriation can be projected into a monetary award.[3] Accordingly, the Debtors' request to estimate the Trade Secrets Claim is granted and MTH's motion to modify the stay to retry the case in the Michigan court is denied.

**Procedures**

Although the Bankruptcy Code does not explicitly detail procedures for estimating claims, a Bankruptcy Court may use whichever method is best suited to the circumstances. *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir. 1982); *In re Seaman's Furniture Company of Union Square, Inc.*, 160 BR at 41. In *In re Baldwin-United Corp*, 55 B.R. 885, 889 (Bankr. S.D. Ohio 1985) the court utilized a procedure akin to a summary trial where there was no jury, live testimony by one witness per party, a discovery cutoff date, and only two days for the hearing. Many courts adhere to the method set forth in the *Baldwin-United* case. *See e.g., In re MacDonald*, 128 B.R. 161, 166-67 (Bankr. W.D. Tex. 1991) (employing an abbreviated procedure practically the same as *Baldwin-United* ); *In re Apex Oil Co.,* 92 B.R. 843 (Bankr. E.D. Mo.1988) (utilizing a methodology analogous to *Baldwin-United); NLRB v. Greyhound Lines (In re*

---

[3] In fact, previously in this case, a similar injunction in favor of the Debtor was monetized.

*Eagle Bus Mfg.)*, 158 B.R. 421 (D. Tex. 1993) (two-day summary trial); *DeGeorge Fin. Corp. v. Novak (In re DeGeorge Fin. Corp.),* 2002 U.S. Dist. LEXIS 17621 (D. Conn. 2002) (one-day trial). Although this is not the only method of conducting the estimation procedure (*see In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982)), a longer method, such as a full-blown trial on the merits, would "eviscerate the purpose underlying Section 502(c)." *Baldwin-United,* 55 B.R. at 899. Moreover, a more time consuming method would run counter to the "efficient administration of the bankrupt's estate . . . " *Bittner*, 691 F.2d at 135. Furthermore, in estimating the value of a claim, the Court of Appeals for the Second Circuit has stated that courts should make a "speedy and rough estimation of [the] claims for purposes of determining [claimant's] voice in the Chapter 11 proceedings . . ." *In re Chateaugay Corp.,* 944 F.2d 997, 1006 (2d Cir. 1991).

MTH complains that the estimation procedure proposed by the Debtors fails to accord with fundamental notions of due process and deliberately tilts towards excluding evidence supportive of MTH's claims. In general, the truncated trial process that can be developed under 502(c) has been found to be consistent with the dictates of due process of law. *See In re FRG, Inc.,* 121 B.R. 451, 456 (Bankr. D. Pa. 1990); *In re Apex Oil Co.,* 92 B.R. at 845-47; *In re Baldwin-United Corp.,* 55 B.R. at 899-902. In addition, when a bankruptcy creditor files a proof of claim, it submits itself to the bankruptcy court's equitable powers and thereby waives its right to a jury trial. *In re Trans Marketing* 117 F.3d 1417 (5th Cir. 1997) *citing Lagenkamp v. Culp,* 498 U.S. 42, 44 (1990); *First Fidelity Bank, N.A. v. Hooker Investments, Inc.* (*In re Hooker Investments, Inc.*), 937 F.2d 833, 840 (2d Cir.1991) ( rejecting creditor's argument that it should not be forced to make the choice between filing a proof of claim and preserving its right to a jury trial).

11

However, as requested by MTH, I find that the procedures proposed by Lionel should be modified somewhat to provide for limited additional discovery and presentation time, the parameters of which shall be the subject of a chamber's conference to be scheduled. *See*.11 U.S.C. §105(d). Similarly, I find that MTH's Deposition Motion is, at best, premature and shall be addressed at the scheduling conference to review the proposed procedures. *See* Local Rule 7007-1(b) ("No discovery-related motion ... shall be heard unless counsel for the moving party first requests an informal conference with the Court...").

**Extension of Exclusivity**

Former section 1121(d) of the Bankruptcy Code, as applicable to this case, permits the court to extend a debtor's exclusive period upon a determination of cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

*See* 11 U.S.C. § 1121(d)(2004). In determining whether a debtor has had an adequate opportunity to negotiate a plan of reorganization and solicit acceptances thereof, a court should consider a variety of factors, addressed below, to assess the totality of circumstances. *In re McLean Indus.*, Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987).

First, although the Debtors cases are not extremely large, the MTH claims and litigation claims add a unique complexity to the resolution of these cases. Second, the Debtors have made good faith progress towards reorganization. The Debtors have improved their business operations and have filed a Plan that proposes to pay all creditors in full with interest. The Debtors are current on all post-petition obligations and predict

12

they will maintain this ability to pay their bills as they come due.  In addition the Debtors have reviewed and resolved many of the claims filed against them.  However, the amounts of MTH's claims remain a significant unresolved contingency in the Debtor's cases requiring further time to confirm their Plan while those claims are liquidated and exit financing can be put into place.

**The Interest Claim and the Legal Fees Claim**

The Debtors also object to, and seek the disallowance and expungement of, the Interest Claim and the Legal Fees Claim.  The Interest Claim calculates interest from the date of the MTH Judgment until the Petition Date.  Because the MTH judgment has been vacated by the Sixth Circuit Decision, there is no longer a valid judgment on which interest could accrue, thereby rendering the Interest Claim void.  The Legal Fees Claim seeks reimbursement of MTH's legal fees and expenses expended in connection with the Trade Secrets Litigation. MTH filed a Petition for Counsel Fees and Cost Reimbursement in the Michigan Court (the "Legal Fees Petition") on November 5, 2004; however, it has not been ruled upon because of the automatic stay extant in this case.  The Legal Fees Petition asserts that under the Michigan Uniform Trade Secrets Act ("MUTSA"), attorney's fees can be awarded to the prevailing party in a litigation if willful and malicious misappropriation exists.  Lionel argues that the Sixth Circuit Decision vacating the MTH Judgment leaves MTH ineligible to seek the reimbursement of incurred legal fees and expenses under the MUTSA and therefore, the Legal Fees Claim is also void. However, as MTH contends, the Legal Fees Claim stands on the same footing as MTH's Trade Secrets Damages Claim and may be resolved along with it.   Accordingly, the objection to the Interest Claim is granted and the claim is expunged; the Legal Fees

Claim is also expunged without prejudice to reassert should fees be subsequently awarded.

**Conclusion**

The litigation in the Sixth Circuit has already consumed seven years and following the reversal by the Circuit Court, the litigation is now in a position that in the vernacular would be deemed, "a do over."  As both sides have made clear their intention to appeal any adverse determination, anywhere, adding years of delay to the issue determination, this is clearly a situation contemplated by Congress for the implementation of section 502(c).  Accordingly, the Motion to Estimate is granted with the hearing procedures suggested by the Movant to be reviewed in a conference to be scheduled with chambers. The Motion to lift the stay is denied.  The Interest Claim and the Legal Fees Claims are expunged.

IT IS SO ORDERED.

Dated: New York, New York
       August 3, 2007

                                          /s/ Burton R. Lifland_____
                                         United States Bankruptcy Judge